4.    SPECIFIC PERFORMANCE, § 44*—*when agreement to lease not enforced.*   Specific performance of an agreement to lease property will not be granted when the terms of the agreement are not fully and clearly stated.

5.    LANDLORD AND TENANT, § 23*—*when rights lost under agreement to lease.*   One who enters into an agreement to lease property for a term of years at a stipulated monthly rental waives his rights under the agreement, where the tenant refuses to sign and accept the lease proffered by the landlord and is permitted to remain in possession upon payment of the stipulated rental.

---

## Lee S. Trainor, Appellee, v. Chicago Sandoval Coal Company, Appellant.

### (Not to be reported in full.)

Appeal from the Circuit Court of Marion county; the Hon. ALBERT M. ROSE, Judge, presiding. Heard in this court at the October term, 1914.   Reversed and remanded.   Opinion filed May 1, 1915.

### Statement of the Case.

Action in assumpsit and on consolidated common counts by Lee S. Trainor against Chicago Sandoval Coal Company for service performed as a civil engineer.   From a judgment for plaintiff, defendant appeals.

The first count alleged that on, to wit, February 1, 1913, defendant promised to pay plaintiff as much money as he reasonably deserved when requested; that he refused to do so and that he had not paid such sum to plaintiff, to the damage of plaintiff of eight hundred dollars.

The second count alleged at on, to wit, the 1st day of December, 1912, the defendant was desirous of having its two mines in and near the village of

Sandoval, Illinois, surveyed and the rooms and entries thereon shown, and defendant was then and there a civil engineer and had experience in surveying coal mines and, in consideration of the promises, that plaintiff, at the request of defendant, would purchase the necessary material and would employ the necessary civil engineers, chief-of-party and instrument man, chain men and helpers, and would superintend and oversee the surveying of said coal mines, the said defendant undertook and promised to pay plaintiff as compensation for said service, material and furnishing the necessary chief and instrument man, chain men and helpers, the cost of the material and one dollar per hour for chief-of-party and instrument man and fifty cents per hour for chain men and helpers used and employed in and about surveying said coal mine.

There was a further allegation that plaintiff, on the 15th day of December, 1912, and divers days thereafter, did furnish material, men and service in accordance with said agreement, amounting in the aggregate to eight hundred dollars and thereafter on the 15th day of January, 1913, defendant paid plaintiff the sum of one hundred dollars to be applied on said account and defendant, although requested on the 1st day of February, 1913, refused to pay plaintiff said amount or any part thereof, and still neglects and refuses so to do.

The third count was the consolidated common counts. A copy of account sued upon was filed with declaration. The plea of general issue was filed to this declaration.

Upon the trial the evidence offered by plaintiff and admitted was under the second count of the declaration.

The contract as testified to by plaintiff was that in answer to a telephone call from Mr. Butterly, the superintendent of the mine, he, plaintiff, went to Sandoval on the 29th day of November, 1912, met

Butterly at the mine and talked about the work. ''He said they wanted a complete survey of the workings and, of course, the necessary top. He asked me what I could do the job for. I told him it would cost him one dollar per hour for the chief-of-party, the man in charge of the work, and I asked him if he desired me to furnish the helpers and he said he preferred I should furnish them, and nothing was said relative to price for the helpers. The company was to furnish plugs and tools to drill the holes. They furnished plugs a part of the time and I furnished them a part of the time. The mine company was to pay for helpers. I was to bill against them every two weeks. The first two weeks ended on January 1, 1913, and on the 15th of January I got one hundred dollars, about one-half of what I asked for. The company was to pay the necessary expenses of myself and men on top. I believe that is all the contract.''

From the exhibits introduced in evidence by plaintiff he received his instructions as to the work in writing, and, among other things, he was to make a map showing all working places and those adjacent with entries leading to same, survey all entries that were working and those that had been stopped and all rooms that were working and those that had been stopped lately, and make a map in scale of one hundred feet to the inch.

There was no evidence that defendant ever accepted or used any part of this work, or that any part of it was tendered to it in the form of plats or notes so that it might be used.

Plaintiff relied and sought to recover upon the theory of the law that because he was stopped by defendant without cause he was entitled to a verdict for the contract price.

Noleman & Smith, for appellant.

J. J. Bundy, for appellee.

MR. JUSTICE HARRIS delivered the opinion of the court.

### Abstract of the Decision.

1. CONTRACTS, § 300*—*when nonpayment not a breach.* There can be no recovery on an inseverable contract for the performance of services and furnishing of material because of failure to pay for the value of services rendered and material furnished up to a certain period, where, although payments are provided for on account, there are no stipulated times for acceptance of work and payment therefor, and the part of the contract performed has not been accepted or appropriated by the defendant.

2. CONTRACTS, § 203*—*when contract not severable.* A contract for the performance of services and furnishing of material is not severable where, although payments are provided for on account, there are no stipulated times for acceptance of the work and payment therefor.

---

### John H. Drury, Administrator, Defendant in Error, v. East St. Louis Light & Power Company, Acme Electric Company and H. C. Windt. East St. Louis Light & Power Company, Plaintiff in Error.

1. NEGLIGENCE, § 1*—*what are elements.* The essential elements for a cause of action for negligence are, the existence of a duty on the part of the person charged to protect the complaining party from the injury received, a failure to perform that duty, and injury resulting from such failure.

2. NEGLIGENCE, § 119*—*when declaration bad for failure to aver duty.* In an action against an electric light company, for the death of a child which was killed by coming into contact with an electric conduit pipe along the outside of a school building which had been installed by a third person and had become charged as a result of insufficient grounding, a declaration *held* to be bad as failure to allege a duty towards such child.

3. ELECTRICITY, § 10*—*when electric company not bound to inspect work of another.* An electric lighting and power company,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.